People v Campbell (2024 NY Slip Op 03995)

People v Campbell

2024 NY Slip Op 03995

Decided on July 26, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 26, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., MONTOUR, OGDEN, KEANE, AND HANNAH, JJ.

484 KA 20-00467

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
LARYN CAMPBELL, DEFENDANT-APPELLANT. 

SARAH S. HOLT, CONFLICT DEFENDER, ROCHESTER (FABIENNE N. SANTACROCE OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (RYAN P. ASHE OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Monroe County (Charles A. Schiano, Jr., J.), rendered May 13, 2019. The judgment convicted defendant upon a nonjury verdict of criminal possession of a controlled substance in the third degree and criminally using drug paraphernalia in the second degree (two counts). 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law and a new trial is granted on counts 3 through 5 of the indictment.
Memorandum: On appeal from a judgment convicting him after a nonjury trial of one count of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]) and two counts of criminally using drug paraphernalia in the second degree (§ 220.50 [2], [3]), defendant contends that the evidence is legally insufficient to establish that he constructively possessed the drugs and drug paraphernalia, and that the evidence is insufficient to establish his liability as an accomplice. Because defendant's motion for a trial order of dismissal was not " 'specifically directed' at th[at] alleged error," he failed to preserve for our review his contention that there is insufficient evidence of his liability as an accomplice (People v Gray, 86 NY2d 10, 19 [1995]; see People v Bell, 198 AD3d 1305, 1306 [4th Dept 2021], lv denied 37 NY3d 1144 [2021]). With respect to the preserved contention, viewing the evidence in the light most favorable to the People (see People v Danielson, 9 NY3d 342, 349 [2007]), we reject defendant's contention that there is insufficient evidence of his constructive possession of the drugs and drug paraphernalia (see People v Mattison, 41 AD3d 1224, 1225 [4th Dept 2007], lv denied 9 NY3d 924 [2007]). Among other things, defendant told a police officer that he rented a room inside the home where the drugs and drug paraphernalia were found, and identification cards with defendant's name were found in one of the bedrooms therein (see generally People v Slade, 133 AD3d 1203, 1205 [4th Dept 2015], lv denied 26 NY3d 1150 [2016]; People v Holley, 67 AD3d 1438, 1439 [4th Dept 2009], lv denied 14 NY3d 801 [2010]). The drugs and drug paraphernalia were found in common areas of the apartment, i.e., the living room and kitchen, and mail addressed to defendant at the home was found on a table in the kitchen (see generally People v Tucker, 173 AD3d 1817, 1818 [4th Dept 2019], lv denied 34 NY3d 938 [2019]; People v Davis, 101 AD3d 1778, 1779-1780 [4th Dept 2012], lv denied 20 NY3d 1060 [2013]). The testimony at trial that the other bedroom in the home contained no furniture supports the inference that defendant's room was the only occupied bedroom (see generally People v Banks, 14 AD3d 726, 727-728 [3d Dept 2005], lv denied 4 NY3d 851 [2005]). "[V]iewing the evidence in light of the elements of the crime[s] in this nonjury trial" (People v Ghent, 132 AD3d 1275, 1275 [4th Dept 2015], lv denied 26 NY3d 1145 [2016]; see Danielson, 9 NY3d at 349), we likewise reject defendant's contention that the weight of the evidence did not support the verdict with respect to his constructive possession of the drugs and drug paraphernalia (see Mattison, 41 AD3d at 1225), and his liability as an accessory (see generally People v Brewer, 196 AD3d 1172, 1174 [4th Dept 2021], lv denied 37 NY3d 1095 [*2][2021], cert denied — US &mdash, 142 S Ct 1684 [2022]).
We agree with defendant, however, that Supreme Court erred in applying the "room" or "drug factory" presumption pursuant to Penal Law § 220.25 (2) (see People v Kims, 24 NY3d 422, 425 [2014]). As relevant here, section 220.25 (2) provides that "[t]he presence of a narcotic drug . . . in open view in a room . . . under circumstances evincing an intent to unlawfully mix, compound, package or otherwise prepare for sale such controlled substance is presumptive evidence of knowing possession thereof by each and every person in close proximity to such controlled substance at the time such controlled substance was found." "Penal statutes 'must be construed according to the fair import of their terms to promote justice and effect the objects of the law' " (People v Fraser, 264 AD2d 105, 110 [4th Dept 2000], affd 96 NY2d 318 [2001], cert denied 533 US 951 [2001], quoting § 5.00; see People v Miller, 70 NY2d 903, 906 [1987]). The drug factory presumption is "intended to allow police in the field to identify potentially culpable individuals involved in a drug business, under circumstances that demonstrate those individuals' participation in a drug operation" (Kims, 24 NY3d at 432-433). According to its drafters, the presumption is "designed to remedy that situation wherein police execute a search warrant on a premises suspected of being a 'drug factory,' only to find dangerous drugs and/or drug paraphernalia scattered about the room. The occupants of such 'factories,' who moments before were diluting or packaging the drugs, usually proclaim their innocence and disclaim ownership of, or any connection with, the materials spread before them. Police, under such circumstances, are often uncertain as to whom to arrest. In addition, with the present burden of proof of knowing possession of dangerous drugs on the [P]eople, successful prosecution of persons other than the owner or lessee of such premises is extremely rare" (Mem of St Commn of Investigation, Bill Jacket, L 1971, ch 1044 at 4).
The legislative history includes the further explanation that the phrase "close proximity" within the statute is "intended to include persons who might, upon the sudden appearance of the police, hide in closets, bathrooms or other convenient recesses" (Letter from St Commn of Investigation, Dec. 1, 1971, Bill Jacket, L 1971, ch 1044 at 7; see Kims, 24 NY3d at 433).
In light of the statute's legislative purpose, the phrase "close proximity" in Penal Law § 220.25 (2) means "when the defendant is sufficiently near the drugs so as to evince defendant's participation in an apparent drug sales operation, thus supporting a presumption of defendant's knowing possession" (Kims, 24 NY3d at 433). "[T]he proximity determination requires careful consideration of the underlying facts related to defendant's location on the premises" (id. at 434). Thus, a defendant need not be apprehended within the same room as the drugs in order to satisfy the element of "close proximity" (see People v Hogan, 118 AD3d 1263, 1264 [4th Dept 2014], affd 26 NY3d 779 [2016]), and the presumption applies to a defendant caught while trying to flee the premises upon the sudden entry by police (see Kims, 24 NY3d at 435).
Here, the drugs were found in a room on the ground floor, and the police did not find defendant in the room with the drugs or in flight therefrom. Officers first observed defendant upstairs on the second floor, "walking from [the observing officer's] left to [his] right." The officers' observation is consistent with defendant walking out of his bedroom, which was, as explained at trial, "up the stairs and kind of off to the left" from where the officers were standing. Officers also testified at trial that defendant was wearing only underwear when he was first encountered, and that defendant's clothing was discovered inside his bedroom.
The "underlying facts related to . . . defendant's location on the premises" (id. at 434) reflect that defendant was not apprehended in close proximity to the drugs as contemplated by the drug factory presumption, i.e., he was not "sufficiently near the drugs so as to evince defendant's participation in an apparent drug sales operation, thus supporting a presumption of defendant's knowing possession" (id.). Defendant was not apprehended in the room with the drugs, he was not apprehended fleeing from that room, and he was not apprehended within or outside of the home while attempting to hide from police. Thus, he was not apprehended under circumstances suggesting that he had, just "moments before," been engaged in drug distillation or packaging (Mem of Commn of Investigation, Bill Jacket, L 1971, ch 1044 at 4).
We therefore conclude that the court erred in ruling that the drug factory presumption applied to the facts of this case. Although the drug factory presumption was applied directly to only count 3, which arose from the alleged possession of cocaine, we further conclude that the [*3]erroneous application of the presumption requires reversal of the judgment and a new trial on each of the three counts upon which defendant was convicted. Indeed, in their respondent's brief in this appeal, the People rely, in part, on the drug factory presumption when addressing defendant's contentions regarding the sufficiency and weight of the evidence with respect to all three counts, and correctly contend that the presumption, if properly applied to the cocaine, would have allowed the court to "infer that if the drugs to which the statutory presumption applied were part of the drug factory's supply, all the contraband found must have been controlled by the factory's operatives" (People v Bundy, 90 NY2d 918, 920 [1997]). In light of our determination, we do not address defendant's alternative contention that the court erred in denying defendant's request for a circumstantial evidence charge.
Entered: July 26, 2024
Ann Dillon Flynn
Clerk of the Court